**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY EUGENE DUTTON,

Defendant - Appellant.

No. 25-6146
(D.C. No. 5:24-CR-00424-JD-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT***

---

Before **TYMKOVICH**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

---

In August 2024, Terry Eugene Dutton assaulted his soon-to-be ex-wife. Police then discovered two rifles in Mr. Dutton's possession. A grand jury charged him with possessing a firearm while being subject to a protective order, in violation of 18 U.S.C. § 922(g)(8). He pled guilty without a plea agreement, and the district court sentenced him to 84 months in prison. Mr. Dutton appeals that sentence, arguing it

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was procedurally and substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

## I. BACKGROUND

Much of this appeal turns on § 2K2.1(b)(6)(B) of the 2024 United States Sentencing Guidelines ("U.S.S.G"), which were in effect at Mr. Dutton's sentencing in September 2025.[1] That provision added four levels to the base offense level "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines defined "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C).

The presentence investigation report in Mr. Dutton's case recommended a four-level enhancement based on § 2K2.1(b)(6)(B). The report said felony charges pending against him in state court—charges arising from the same incident that led to the discovery of his firearms—satisfied the "another felony offense" requirement. Those charges included violation of the following Oklahoma statute:

> Any person who shall devise any plan, scheme or program of action to cause serious bodily harm or death of another person with intent to perform such malicious act of violence, whether alone or by conspiring with others, shall be guilty of a Class B4 felony offense, punishable upon

[1] The 2025 Guidelines, effective in November 2025, moved § 2K2.1(b)(6)(B) to § 2K2.1(b)(7)(B).

> conviction thereof by imprisonment for a period of not more than ten (10) years.

Okla. Stat. tit. 21, § 1378(C) (“the plan-to-harm offense”).

Mr. Dutton disputed the application of § 2K2.1(b)(6)(B). The district court therefore held an evidentiary hearing as part of sentencing proceedings to determine if Mr. Dutton’s behavior violated the Oklahoma statute. T.D., Mr. Dutton’s ex-wife—the victim of his August 2024 assault—testified.

According to T.D., she and Mr. Dutton were in the middle of divorce proceedings in August 2024 and were living apart. She had never given him her new address. On the day of the assault, T.D. was backing out of her driveway and saw Mr. Dutton drive past. Shortly thereafter, T.D. ended up parked in the street outside her house. Mr. Dutton entered her car on the passenger’s side, grabbed her hair, and punched her in the head and ribs, stating he had “been planning this for months, and this is what [T.D.] deserve[d].” R. vol. 3 at 14. T.D. managed to escape the car and run to a neighbor’s house. The neighbor dialed 911.

In addition to T.D.’s testimony, the district court considered the written statements made by the neighbor and the police officers who responded to the scene. According to those statements, the neighbor, while on the 911 call, saw Mr. Dutton moving items from T.D.’s car and his own vehicle into T.D.’s house via the garage, using the garage door clicker in T.D.’s car to gain access. He then went into T.D.’s house, closed the garage door, and barricaded himself inside.

Police arrived and tried to persuade Mr. Dutton to come out. About 10 minutes into the standoff, he slid a typewritten, page-long note under the garage door. It began, "So why is and [sic] did this happen?" R. vol. 1 at 108. It went on to accuse T.D. of ruining his life and then asserted, "[S]he is not going to be allowed to carry on, she don't deserve it. She is not going to get to see my precious granddaughter [also T.D.'s granddaughter] grow and corrupt her life like she did her own kids. I cannot and will not allow that to happen." *Id.* He further asserted that he was fully in his right mind and deemed himself "the battered spouse[] [who] has had enough." *Id.* He concluded, "I'm setting myself free." *Id.*

Police negotiators eventually noticed Mr. Dutton's speech was becoming slurred. A SWAT team entered the home and found Mr. Dutton in a bedroom and unresponsive, apparently from a prescription drug overdose. He was taken to the hospital, revived, and arrested.

Inside T.D.'s house, police discovered a backpack Mr. Dutton had brought inside. It contained "four loaded rifle magazines, zip ties, duct tape, two rifles, a black pair of leather gloves, a tomahawk, and a knife and a sheath." R. vol. 1 at 59.

The district court concluded that a preponderance of the evidence supported the § 2K2.1(b)(6)(B) enhancement based on the Oklahoma plan-to-harm offense and the firearms in Mr. Dutton's possession when he encountered T.D. Mr. Dutton's total offense level, combined with his criminal history score, yielded a Guidelines range of 37 to 46 months in prison. The district court varied upward to 84 months. This appeal followed.

## II. DISCUSSION

Mr. Dutton argues his sentence is procedurally unreasonable, because the district court misapplied § 2K2.1(b)(6)(B). He further challenges his 84-month sentence as substantively unreasonable. We review each contention for abuse of discretion. *See United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014) ("When a defendant has properly preserved his or her objection to a sentence, we review it under an abuse of discretion standard for procedural and substantive reasonableness." (internal quotation marks omitted)).

### A. *Procedural Unreasonableness*

A district court's sentence is procedurally unreasonable if it "improperly calculat[es] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Section 2K2.1(b)(6)(B) applies when "the defendant . . . [1] used or possessed any firearm or ammunition [2] in connection with [3] another felony offense" (bracketed numerals added for clarity). Mr. Dutton does not dispute the first element.

#### 1. Another Felony Offense

Mr. Dutton begins by disputing the third element, claiming "there was no felony offense because there was no plan to commit violence against T.D. on [the date of the confrontation]." Aplt. Opening Br. at 21. Rather, "his interaction with T.D. at her house was not planned because she left the house when he was driving by." *Id.* at 22.

To apply a Guidelines enhancement, the district court must conclude that a preponderance of the evidence supports the underlying allegations. *United States v.*

*Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020). We review for clear error both the district court's factual findings underlying the § 2K2.1(b)(6)(B) enhancement and the district court's conclusion that those facts add up to a preponderance of the evidence. *See United States v. Hoyle*, 751 F.3d 1167, 1174–75 (10th Cir. 2014).

There was no clear error as to the third element. The evidence showed that Mr. Dutton discovered T.D.'s new address. He came to T.D.'s neighborhood with rifles, zip ties, duct tape, black leather gloves, a knife, a tomahawk, and a typewritten note describing himself as the battered spouse and explaining that he could not allow T.D. to go on allegedly corrupting their granddaughter. When he attacked T.D. inside her car, he told her he had "been planning this for months." R. vol. 3 at 14. On this record, the district court permissibly found that Mr. Dutton had "devise[d] [a] plan, scheme or program of action to cause serious bodily harm or death of [T.D.] with intent to perform such malicious act of violence." Okla. Stat. tit. 21, § 1378(C).

Mr. Dutton counters that the attack did not meet the elements of the plan-to-harm offense. He claims, for example, that his encounter with T.D. was unplanned because he was only driving by. He further contends his attack on T.D. inside her car did not involve use of guns and did not result in serious bodily harm or death. But the plan-to-harm statute focuses on a plan and the intent to carry it out, not on what happened when the person tried to carry it out.[2] The district court did not clearly err

[2] Oklahoma's pattern jury instruction for this offense similarly focuses on the plan and the intent:

when it concluded Mr. Dutton came to T.D.'s neighborhood intending to execute his plan.

**2. In Connection With**

Mr. Dutton next disputes § 2K2.1(b)(6)(B)'s second element—whether he used the firearms "in connection with" the plan-to-harm offense. The Guidelines say § 2K2.1(b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). The district court found that Mr. Dutton "drove over to T.D.'s house with the backpack and firearms and a plan to cause her harm, [and] that possession of the firearms emboldened him and facilitated or had the potential to facilitate the commission of the crime." R. vol. 3 at 123. Mr. Dutton challenges this conclusion by again pointing to how the attack played out. He further argues that "the guns in

---

> No person may be convicted of planning to cause (serious bodily harm to)/(the death of) another person unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>
> First, willfully;
>
> Second, devising a plan/scheme/program of action;
>
> Third, involving/(intended to involve) (serious bodily harm to)/(the death of) another person;
>
> Fourth, with the intent to perform a malicious act of violence.

OUJI-CR 2-25 (boldface omitted).

[his] car [were] collateral," Aplt. Opening Br. at 24, apparently meaning something like "coincidental."

The district court did not clearly err in finding that the unlawfully possessed firearms were part of the plan.

* * *

We affirm the district court's application of the § 2K2.1(b)(6)(B) four-level enhancement.

### B. *Substantive Reasonableness*

Mr. Dutton challenges the substantive reasonableness of his 84-month sentence. Because the district court varied upward from the recommended Guidelines range of 37 to 46 months, we "may consider the extent of the deviation, but [we] must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on [the] whole, justify the extent of the variance." *Id.* "We will find an abuse of discretion only if the sentence exceeded the bounds of permissible choice." *United States v. Garcia*, 946 F.3d 1191, 1211 (10th Cir. 2020) (internal quotation marks omitted).

The district court identified the most significant § 3553(a) factors as "the need for the sentence imposed . . . to provide just punishment for the offense," § 3553(a)(2)(A), and the need "to protect the public from further crimes of the defendant," § 3553(a)(2)(C). The court said Mr. Dutton's crime was extremely serious in light of the surrounding facts and noted that, although Mr. Dutton had minimal criminal history, his behavior appeared to be getting worse with age.

Mr. Dutton first argues the district court misperceived that he came to T.D.'s neighborhood intending to carry out a murder-suicide plot, and that this misperception influenced the court's choice of sentence. We reject this argument for the reasons stated in our procedural reasonableness discussion.

Mr. Dutton next claims the district court should not have considered his apparent murder-suicide plot when weighing the § 3553(a) considerations because the court already factored that behavior into the sentencing range when it applied the § 2K2.1(b)(6)(B) enhancement. But "[d]istrict courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *United States v. Walker*, 74 F.4th 1163, 1205 (10th Cir. 2023) (brackets in original) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 611 (2024).

Finally, Mr. Dutton says that the district court did not adequately explain why a sentence of 84 months (close to double the high end of the Guidelines range) was "sufficient, but not greater than necessary," § 3553(a). The district court said, "This [84-month sentence] represents an upward variance as I find the advisory guideline range does not reflect appropriately the retribution and incapacitation factors that I find to be the most significant in my analysis." R. vol. 3 at 168. The court had already thoroughly discussed those factors. Its explanation was adequate.

"We will find an abuse of discretion only if the sentence exceeded the bounds of permissible choice." *Garcia*, 946 F.3d at 1211 (internal quotation marks omitted).

On this record, the district court's choice of 84 months did not exceed these bounds. We therefore reject Mr. Dutton's substantive reasonableness challenge.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge